UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKY WIDNER,

        Plaintiff,

v.

        Case No.  1:13-CV-590

        HON. ROBERT HOLMES BELL

FREEDOM SMOKE USA VII, INC.,

        Defendant.
_____/

**O P I N I O N**

This action under the Fair Labor Standards Act comes before the Court on Defendant's motion for summary judgment (ECF No. 25) and on Defendant's motion to strike Plaintiff's response (ECF No. 28.)  For the reasons that follow, Defendant's motion for summary judgment will be denied, and its motion to strike will be granted in part and denied in part.

**I.**

Before considering Defendant's motion for summary judgment, the Court must address Defendant's motion to strike Plaintiff's response to the motion.  On September 4, 2013, this Court entered a case management order requiring the parties to file dispositive motions no later than May 1, 2014.  (ECF No. 11.)  Defendant filed its summary judgment motion within the applicable time limit.  (ECF No. 25.)  On May 28, 2014, Plaintiff filed its brief in response to Defendant's motion "and in support of summary disposition in favor of

plaintiff." (ECF No. 27.) To the extent Plaintiff is moving for summary judgment in her favor, her motion is untimely. Furthermore, Plaintiff's response, exclusive of the cover sheet, tables, and indices, is 34 pages in length, which exceeds the 25-page limit for responses to dispositive motions under Local Rule 7.2(b). W. D. Mich. LCivR 7.2(b). Plaintiff has not requested leave to file a motion outside of the time limits set by the case management order nor has she requested leave to exceed the page limits.

Despite the untimeliness of Plaintiff's motion and the excessive length of her brief, the Court declines Defendant's request to strike her brief in its entirety. To the extent Plaintiff's brief responds to Defendant's motion, her brief was timely. Moreover, Defendant has filed a reply brief, (ECF No. 29), and has not suggested that it needs additional pages in order to effectively respond to Plaintiff's oversized response. The interests of justice will be best served by allowing the brief to stand as it is. However, the Court will not consider Plaintiff's cross-motion for summary judgment.

## II.

Defendant Freedom Smoke USA VII, Inc. ("Freedom Smoke") sells electronic cigarettes and various flavored "juices" that are used in them at a store in Holland, Michigan. (Widner Aff. ¶ 4.) Freedom Smoke is owned by Pamela Workman-Parker and David Dettloff, who are located in Tucson, Arizona. (Harvey Dep. 20.) Workman-Parker and Dettloff also own Maui Sun, located in Tucson, Arizona, which provides training and support for Freedom Smoke and maintains the personnel files for Freedom Smoke. (Harvey Dep. 9, 11, 19.)

2

Plaintiff Vicky Widner applied for a position as a store manager for Defendant. She was hired by Defendant in November 2012, before the Holland store opened. (Employment Application, ECF No. 25-4; Widner Dep. 8-9.) When she was hired, her direct supervisor at the Holland store was Jeff Kendall, the Operations Site Manager. (Widner Dep. 14; Detloff Aff. ¶ 13.) The next person above Kendall was Lloyd Haskins, a/k/a L.A. Haskins, who also worked at the Holland store. (Widner Dep. 28.) The Holland store had six employees, including salespeople and blenders. (Widner Dep. 40.)

On December 4, 2012, Plaintiff signed a job description indicating that her essential functions as manager of the retail department included managing the sales process, overseeing sales staff, monitoring sales activities and customer feedback, managing product inventory, resolving problems related to the sales process, customers, or staff, managing the staff schedule, monitoring attendance and performance, conducting budget planning, determining staffing needs, directing the hiring and termination processes, and overseeing staff training. (Job Description, ECF No. 25-2; Widner Dep. 18-19.)

Defendant opened its Holland store on December 18, 2012. (Widner Dep. 19, 28.) Jeff Kendall was terminated in January 2013. (Widner Dep. 10; Dettloff Aff. ¶ 14.) Haskins was terminated on March 12, 2013. (Haskins Aff. ¶ 3, ECF. No. 29-2.) Plaintiff was terminated on April 7, 2013.

Plaintiff filed this action against Defendant, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay her overtime compensation. Defendant has moved for summary judgment based on its contention that Plaintiff was exempt from the

3

FLSA's overtime requirements as a matter of law. Defendant contends that Plaintiff was hired as a manager and that she performed as a manager at the Holland store from the time she was hired until her termination. Plaintiff concedes that she became a manager after Haskins was terminated on March 12, 2013. (Widner Dep. 47.) However, she contends that despite her formal title, prior to Haskins' termination, her duties were those of a sales clerk, waiting on customers, cleaning the store, and performing miscellaneous tasks at the direction of one or more full-time managers. (Pl. Resp. Br. 5.)

**A. Legal Standards**

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's

position is not sufficient to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252.

A party with the burden of proof faces a "high hurdle" in establishing entitlement to summary judgment. *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party bears the ultimate burden of persuasion at trial, the movant "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Cockrell v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore, et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed.2000)); *see also Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("[W]here the moving party has the burden – the plaintiff on a claim for relief or defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."). "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

The Fair Labor Standards Act ("FLSA") requires employers to pay employees overtime compensation unless the employee is exempt. 29 U.S.C. §§ 207(a), 213; *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012). The FLSA is liberally construed to effectuate the broad policies and intentions of Congress. *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994). The FLSA exempts from the overtime requirement any employee employed in a bona fide executive or administrative capacity. 29

5

U.S.C. § 213(a). Overtime exemptions are affirmative defenses on which the employer bears the burden of proof by a preponderance of the evidence. *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007). Exemptions are to be "narrowly construed against the employers seeking to assert them." *Id.* (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

Defendant contends that Plaintiff is exempt from the overtime requirements either because she was a bona fide executive or administrative employee.

The Secretary of Labor, as directed by statute, 29 U.S.C. § 213(a)(1), has adopted regulations defining what it means to be a bona fide executive or administrative employee:

> The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose **primary duty** is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (emphasis added).

> The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose **primary duty** is the performance of office or non-manual work directly related to the management or general business operations of the

6

>employer or the employer's customers; and
>(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (emphasis added). The term "primary duty" is further defined as follows:

>To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). "'Primary duty' does not mean the most time-consuming duty; it instead connotes the 'principal' or 'chief' – meaning the most important – duty performed by the employee." *Thomas*, 506 F.3d at 504 (quoting *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982)).

**B. Analysis**

The issue for purposes of this motion is whether, prior to March 12, 2013, Plaintiff was a bona fide executive or administrative employee. In other words, did her primary duties at Freedom Smoke involve management of the enterprise and the supervision of other employees, or the exercise of discretion and independent judgment with respect to matters of significance related to the management or general business operations of the employer or the employer's customers?

7

There is no dispute that Plaintiff had the title of manager. Plaintiff was hired as the store manager and she acknowledged that she was a manager on December 4, 2012, when she signed her job description. (Detloff Aff. ¶ 10, ECF. No. 25-1; Widner Dep. 14-15, 18.) Plaintiff indicated on her EEOC discrimination charge that she "worked as a manager." (EEOC Charge, ECF No. 25-3.)   Nevertheless, the most important consideration is Plaintiff's actual activity rather than her title. "[C]ourts must focus on the actual activities of the employee in order determine whether or not he is exempt from the FLSA's overtime regulations." *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 688-89 (6th Cir. 2001); *see also* 29 C.F.R. § 541.103 (providing that the "determination of whether an employee has management as his primary duty must be based on all the facts in a particular case.").

Defendant has presented evidence from its owner, David Detloff, that Plaintiff was responsible for opening and running the Holland store, that she managed multiple employees on a daily basis, and that she hired and fired employees during her employment. (Detloff Aff. ¶¶ 5, 9.) Defendant has also presented evidence from Haskins, who worked with Plaintiff at the Holland store. Haskins stated that Plaintiff "carried out the duties of store manager throughout her employment with Freedom Smoke." (Haskins Aff. ¶ 5, ECF 29-2.) Haskins stated that Plaintiff was responsible for scheduling, that she would "regularly let the employees know that she was in charge," and that employees would come to her when they had concerns regarding their schedule or their employment. (Haskins Aff. 8, 13-15, 18.) He also stated that "mainly it was Ms. Widner who handled the interviews and applications for new employees." (Haskins Aff. ¶ 21.)

8

Plaintiff's description of her role at Freedom Smoke differs materially from Defendant's. Plaintiff contends that until Haskins was terminated, she did not have the responsibilities of a store manager. She testified that shortly after the store opened, Kendall told her that she was not the store manager. (Widner Dep. 9-10, 15, 28.) Kendall and Haskins managed the Holland store, handled customer complaints, and told the sales staff what to do. (Widner Dep. 15, 29, 32-33, 37-38, 58.) She testified that the small Holland store was also managed in large part out of the Tucson corporate headquarters which sent individuals to the Holland store approximately once a month. (Widner Dep. 11, 21, 25.) Plaintiff described her job as basically that of a sales clerk. (Widner Dep. 8, 20-21, 44.) She took turns waiting on customers, cleaning the store, and assisting with the training of new hires the same as any other sales clerk. (Widner Dep. 9, 24, 31-32.) Plaintiff denies any supervisory role over the other employees. (Widner Dep. 15.) She denies overseeing the sales staff, monitoring sales activities, managing inventory, determining staffing needs, or budget planning. (Widner Dep. 20, 22, 39.) She testified that she prepared the schedule for Haskins until Tucson began preparing the schedule. (Widner Dep. 22.) Plaintiff also denies any significant role in the hiring process. She testified that prior to mid-March she did not have authority to hire and did not hire anyone. (Widner Dep. 22, 40.) She testified that she sat in on a couple of interviews, but did not conduct the interviews because Tucson was responsible for the interviewing and hiring. (Widner Dep. 22, 30-31.) Moreover, although she acknowledges that she terminated two employees, she testified that she did not make the

9

termination decisions, she did not have authority to fire, and only terminated the two employees because she was directed to do so by Haskins and by corporate headquarters in Tucson. (Widner Dep. 22-23, 40.)

Haskins stated that when he was absent from the store, which happened often during the day, Plaintiff was responsible for running the store, including overseeing employees and handling customer complaints. (Haskins ¶¶ 15, 17.) Plaintiff denied taking on any such responsibilities because Haskins was never absent from the store; "LA was there all the time open to close." (Widner Dep. 29.)

Haskins stated that Plaintiff had an office she shared with Matt Bueschel, the blending manager, and that she had her own computer there. (Haskins Aff. ¶ 22.) He stated that other sales clerks did not have access to that office, nor did they have their own computers. (*Id.*). Plaintiff contradicted Haskins when she testified that prior to mid-March she did not have an office; she merely had access to a community space where all the sales clerks could go and watch videos on the computer. (Widner Dep. 28-29.)

Defendant has presented evidence that Plaintiff communicated daily with corporate headquarters regarding inventory needs, hiring decisions, and employee issues. (Haskins Aff. ¶ 11, 18, 23.) In response, Plaintiff has presented evidence that although she sometimes typed emails to the corporate office, she did so at Haskins's direction, and her activity was

10

clerical in nature. (Widner Aff. ¶¶ 22, 27.)[1]

There is no dispute that Plaintiff was given the security code to unlock the store, and the combination to the safe. (Widner Dep. 11; Haskins Aff. ¶ 9, 10.) Haskins stated that she also had the access code to his office, and that when he arrived in the morning he would regularly find that Plaintiff had already accessed his office, opened the safe, and counted the cash prior to his arrival. (Haskins Aff. ¶ 10.) Plaintiff, on the other hand, has testified that even if, prior to mid-March, she unlocked the door to the store before Kendall or Haskins arrived, she would simply turn on the radio or TVs; one of the managers, Kendall or Haskins, was always there to open or close the store, and that when she counted cash, she did so with Kendall or Haskins as required by store policy. (Widner Dep. 11-12, 40, 52, 60.)

Plaintiff's recurrent theme that she did not manage because she had so many layers of managers above her is not, in itself, sufficient to defeat Defendant's motion for summary judgment. "'[A]ctive supervision and periodic visits by a [district] manager do not eliminate the day-to-day discretion of the on-site store manager.'" *Thomas*, 506 F.3d at 506-07 (quoting *Murray v. Stuckey's Inc.*, 50 F.3d 564, 570 (8th Cir. 1995)). "A 'local store

---

[1] Defendant asserts that Plaintiff has attempted to create issues of fact by contradicting her deposition testimony with her affidavit. The general rule is that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). *Reid* does not, however, prevent a party from supplementing incomplete deposition testimony with a sworn affidavit. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006). The cited portions of Plaintiff's affidavit supplement rather than contradict her deposition testimony.

11

manager's job is [no] less managerial for FLSA purposes simply because . . . she has an active [district manager].'" *Id.* (quoting *Murray*, 939 F.2d at 619. Moreover, the fact that Plaintiff spent the majority of her time doing sales clerk activities, is insufficient, in itself, to defeat Defendant's motion for summary judgment. Sales clerk activities may overlap with management activities, as evidenced by the Secretary of Labor's definition of "primary duty," which includes the following example:

> Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c). *See also Thomas*, 506 F.3d at 504 (noting that where an employee manages while at the same time performing non-exempt tasks normally assigned to subordinate employees, the court will not give undue weight to the time factor).

Upon review of all the evidence, the Court concludes that Plaintiff has presented sufficient evidence to create material questions of fact concerning the extent to which her duties at Freedom Smoke prior to March 12, 2013, involved management, directing the work of others, authority to hire or fire, or the exercise of discretion and independent judgment. Viewing the facts in the light most favorable to Plaintiff, a jury could conclude that Plaintiff's actual work was not primarily managerial in nature. The applicability of an FLSA

exemption may be decided as a matter of law only in the absence of a material fact dispute. *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 901 (6th Cir. 2012). Where, as here, the parties have presented conflicting evidence about the employee's primary job responsibilities, summary judgment is not proper. *Id.*; *see also Nicholson v. Bangor Historic Track, Inc.*, 2:11-CV-00347-NT, 2013 WL 685337, at *8m (D. Me. Feb. 25, 2013) ("It is for a fact-finder and not the Court to determine how the Plaintiff actually spent her work day, and the competing facts on these determinations preclude summary judgment for either the Plaintiff or the Defendant."). Accordingly, Defendant's motion for summary judgment will be denied.

An order consistent with this opinion will be entered.


Dated: August 18, 2014 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE